**DOMSEY TRADING CORPORATION, Domsey Fiber Corporation, and Domsey International Sales Corporation, a Single Employer, Petitioner–Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner,**

and

**International Ladies' Garment Workers' Union; Local 99, International Ladies' Garment Workers' Union, Intervenors.**

Nos. 904, 905, Docket 93–4089L, 93–4179XAP.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1993.

Decided Feb. 18, 1994.

David Habenstreit, National Labor Relations Board, Washington, D.C. (Jerry M. Hunter, General Counsel, Yvonne T. Dixon, Acting Deputy General Counsel, Nicholas E. Karatinos, Aileen Armstrong, Deputy Associate General Counsel, Linda Dreeben, Supervisory Attorney, National Labor Relations Board, Washington, D.C., of counsel), for Respondent–Cross–Petitioner.

Stuart Weinberger, Ardsley, New York (Max Zimny, International Ladies' Garment Workers' Union, New York, New York, Richard M. Greenspan, Ardsley, New York, of counsel), for Intervenors.

Before: MESKILL, WINTER and PRATT, Circuit Judges.

WINTER, Circuit Judge:

Domsey Trading Corporation, Domsey Fiber Corporation, and Domsey International Sales Corporation ("Domsey"), a single employer, petition for review of a decision of the National Labor Relations Board holding that Domsey committed unfair labor practices in violation of Section 8(a)(1), (3), and (4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), (4) (1988), and, *inter alia*, ordering the reinstatement of formerly striking employees. The National Labor Relations Board ("NLRB") cross-petitions for enforcement of the order. The International Ladies' Garment Workers' Union and its Local 99 (the "Union") have intervened in support of enforcement. We deny the petition for review and enforce the order.

Domsey sells and ships used clothing from its plant in Brooklyn, New York. On January 30, 1990, approximately 200 of Domsey's workers affiliated with the Union went on strike. They charged that Domsey had committed unfair labor practices and demanded that Domsey recognize the Union. The Union's primary claim was that workers had been disciplined or fired for attending Union meetings. The strike was extremely bitter and punctuated by the exchange of obscene language and ethnic and racial insults.

The strike ended on August 10, 1990, when the Union sent Domsey a telegram stating that "EACH STRIKING EMPLOYEE UNCONDITIONALLY OFFERS TO RETURN

H. Reed Ellis, Newark, New Jersey (Robert T. McGovern, DeMaria, Ellis, Hunt, Salsberg & Friedman, Newark, New Jersey, of counsel), for Petitioner–Cross–Respondent.

TO WORK AND BE REINSTATED TO HIS OR HER POSITION. TO ASSIST IN REINSTATEMENT WORKERS WILL BE AT YOUR FACILITY ON AUGUST 13, 1990 AT 8 A.M. READY TO RETURN TO WORK." On August 13, approximately 127 of the strikers reported for work and approximately 68 did not.[1] Domsey imposed several conditions on the reinstatement of the strikers who returned to work on August 13, including the completion of a detailed application and an Immigration and Naturalization Service form and their return by registered mail. Several of the employees who did return were threatened or physically assaulted, while others received their written offers of reinstatement so late that they themselves could not arrive at the appointed time. On August 15, Domsey sent letters to 28 of the returnees terminating them for allegedly failing to accept reinstatement on August 13. Although Domsey eventually sent out 134 offers of reinstatement, only 55 of these went to strikers who did not appear on August 13.

The following months were marked by a series of further unfair labor practices by Domsey. Reinstated employees were greeted with abusive, vulgar language and less desirable and more arduous work assignments than those they had enjoyed before the strike. One employee was pelted with balled-up coats until she required medical evacuation. Another was pushed and punched for wearing Union insignia on her clothing. There was evidence that many of these events were recounted to absent employees.

The Union filed unfair labor practice complaints against Domsey, and an administrative law judge found that unfair labor practices had been employed by Domsey. The Board found that on August 13 Domsey had "never made a valid offer of reinstatement, collective or otherwise, in response to the Union's unconditional offer on behalf of all strikers to return to work" and ordered reinstatement of all of the former strikers. Domsey challenges only that part of the

NLRB's order requiring it to reinstate strikers who did not appear for work on the morning of August 13, 1990, or did not reply to Domsey's subsequent offers.

Domsey contends that it was not obligated to reinstate those strikers who failed to appear on August 13 or in response to subsequent offers. We disagree. Generally, of course, an employee who fails to respond to an offer of reinstatement loses his or her right to it. *See Mississippi Steel Corp.,* 169 N.L.R.B. 648 (1968), *enf'd sub. nom. United Steel Workers of America v. NLRB,* 405 F.2d 1373 (D.C.Cir.1968). However, we believe that this rule does not apply where the record demonstrates that: (i) reinstatement would not have occurred, or would have been attended by egregiously unlawful conduct, including physical abuse; and (ii) there is evidence that some absent employees were aware of these facts. Where, as here, an employer does not timely reinstate those who offer to return and continues to commit unfair labor practices that consciously discourage absent employees from returning, the employer may not take advantage of an employee's failure to return on a particular date or to respond to disingenuous offers of reinstatement. The record in the instant matter reveals an effort to avoid the reinstatement of workers by imposing unnecessary conditions and to time purported offers of reinstatement so as to make it nearly impossible for many of the returning strikers to apply successfully. The same reasoning applies to Domsey's subsequent offers of reinstatement of March 22 and April 11, 1991, made as they were in the climate of continuing egregious violations. The Board was thus correct in finding that Domsey's failure to offer reinstatement to those workers not appearing on or after August 13 violated Section 8(a)(1) and (3) of the National Labor Relations Act.

We deny the petition and order enforcement.

---

1. The parties dispute whether 132 or 127 workers reported for work on August 13, 1990. The precise number is not relevant to the disposition of this appeal, because we enforce the Board's order requiring reinstatement of all former strikers.